**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN**

In re:

**Fourteenth Avenue Cartage Company, Inc.,**

    Debtor.

_____/

Case No. 19-54128-mlo
Chapter 11
Hon. Maria L. Oxholm

**ORDER GRANTING
FINAL APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT
AND CONFIRMING DEBTOR'S PLAN OF REORGANIZATION**

This matter having come before the Court on confirmation of the Debtor's *First Amended Plan of Reorganization* [DN 178] (the "Plan"); Debtor seeks entry of this Order Confirming the Plan (the "Confirmation Order"); due and appropriate notice under the circumstances having been given; all creditors and interested parties have had an opportunity to be heard; the Court having considered the Plan and the record in this Chapter 11 case to date; due and sufficient factual and legal cause appearing therefore; all objections having either been resolved by this Confirmation Order or overruled; and the Court otherwise being fully advised in the premises;

    **THE COURT FINDS AND DETERMINES THAT**:

    A.    The Court has jurisdiction over the Debtor's bankruptcy case (the "Bankruptcy Case") pursuant to 28 U.S.C. §§157 and 1334. Venue before this Court is proper pursuant to 28 U.S.C. §§1408 and 1409. The confirmation of the Plan is a core proceeding under 28 U.S.C. §157(b)(2).

B. All capitalized terms not defined herein have the meanings ascribed to them in the Plan or Disclosure Statement.

C. On October 3, 2019 ("Petition Date"), Debtor commenced this Bankruptcy Case by filing a petition under chapter 11 of title 11 of the United States Code.

D. The Official Committee of Unsecured Creditors ("Committee") has been appointed under 11 U.S.C. § 1102.

E. The Debtor filed its First Amended Combined Plan of Reorganization and Disclosure Statement with this Court on April 23, 2020 [DN 178].

F. On April 24, 2020, this Court entered its Order Granting Preliminary Approval of the First Amended Disclosure Statement ("Approval Order") [Docket No. 179 ].

G. Debtor timely transmitted Ballots to the holders of Impaired Claims in accordance with the Approval Order and Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and served copies of the Plan and the Approval Order on all required parties.

H. Under the Plan, the Debtor is not liquidating and is continuing in business after consummation of the Plan.

I. On June 8, 2020, Debtor's counsel filed Debtor's Ballot Report and attached a Tabulation of Ballots and copies of the Ballots cast by Debtor's creditors and

2

Interest Holders (the "Voting Report") [Docket No. 212]. Pursuant to the Voting Report, all Classes voted to accept the Plan, except for Class III which did not vote in favor or against the Plan and is, therefore, deemed to reject the Plan.

J. The following objections to confirmation were filed:

| Docket No. | Objecting Party |
|---|---|
| 191 | United States Trustee |
| 194 | Chemical Bank, a division of TCF National Bank ("Chemical Bank") |
| 197 | Capital Alliance Corporation ("Alliance") |
| 198 | Penske Truck Leasing Co., L.P. ("Penske") |
| 210 | The Committee |

K. FCA US, LLC ("FCA US") has also requested clarifying language regarding Debtor's assumption of its executory contract with FCA US.

L. On June 11, 2020, the Court held a hearing to consider confirmation of the Plan (the "Confirmation Hearing").

M. At the Confirmation Hearing, all parties with objections had an opportunity to be heard.

N. Debtor has negotiated full resolutions of the Objections of Chemical Bank and the Committee, and has agreed to the clarifying language requested by FCA US, which resolutions are reflected in this Confirmation Order.

O.  The provisions of this Order partially address the objections of the United States Trustee, Alliance and Penske. To the extent that these objections are not resolved or made moot through this Confirmation Order, the objections are overruled.

P.  The Court has reviewed the Plan, heard the arguments and evidence presented by the parties, and finds that the Plan, as modified by this Confirmation Order, satisfies and complies with each of the elements necessary for confirmation under set forth in §1129(a) of the Bankruptcy Code.

Q.  The modifications proposed herein do not adversely affect the Claim of any Creditor in the Bankruptcy Case.

R.  The Plan complies with the requirements for confirmation set forth in Section 1129(a) and, with respect to Class III, the requirements of 1129(b)(2)(A) are satisfied because the Plan proposes to return the collateral securing the Class III Claim to the Class III Claim Holder.

S.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended, and that the Plan was proposed in good faith.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT**:

1. The Plan, including all of its terms, provisions and exhibits which are incorporated herein by reference, is confirmed under §1129(a) of the Bankruptcy Code, subject to the modifications set forth below. All objections to confirmation of the plan

or final approval of the Disclosure Statement not resolved through this Confirmation Order are overruled.

2. The Disclosure Statement is approved on a final basis.

3. All property of the estate is hereby vested in the Reorganized Debtor, including all Causes of Action, whether arising before or after the Petition Date, except as explicitly set forth in this Confirmation Order or in the Plan. Failure of Debtor to list or disclose any Cause of Action shall not be a defense in any action, suit, demand, counter-claim, cross-claim, assertion of set-off or recoupment rights, or arbitration action brought by the Reorganized Debtor.

4. The modifications contained in this Confirmation Order constitute modifications allowed pursuant to 11 U.S.C. § 1127 and do not adversely change the treatment of any Claim or Interest under the Plan. Accordingly, in accordance with Fed. R. Bankr. P. 3019, the Plan shall be deemed accepted by all Creditors and Interest Holders who have previously accepted the Plan, and it is not necessary for the Plan to be re-noticed to Creditors.

5. If the date for any payment or action required of Debtor or Reorganized Debtor under this Confirmation Order or the Plan falls on a date which is not a Business Day, the due date for such payment or action shall automatically be extended to the next occurring Business Day.

6. **Resolution of Chemical Bank's Objection:** The following subsection 3.1.2(i)(f) is added as follows:

> 3.1.2. The interest rate applicable to POC 4 (loan 3091) shall increase to 7.25% (Prime +4 variable) with a floor (minimum) interest rate of 7.25% effective December 11, 2020.

7. **Resolution of Committee's Objection**: The Plan is modified as follows:

> A. The Debtor Trust established by the Plan, as defined in Section 1.12.28, shall be named the "Fourteenth Avenue Cartage Trust." The Trust shall be governed by the agreement filed by the Committee on May 28, 2020 at Docket #201, as will be amended, subject to and based upon the United States Trustees' objections, which amended trust agreement will be filed with the Bankruptcy Court ("Trust Agreement"). The Trust Agreement will be subject to post-confirmation review by a tax attorney, and modification to the extent necessary to comply with updated tax law and regulations. The Trust Agreement is an Exhibit under Section 1.6 of the Plan and, as such, the terms of the Trust are deemed to be included in the Plan including for purposes of Section 13.7. The Debtor's Trust may be amended as set forth in Section 13.13 of the Trust Agreement. Notwithstanding anything to the contrary in the Trust Agreement or any subsequent amendment, in the event of any conflict between this Order and the Trust Agreement, this Order is controlling. In the event of any conflict between the Plan and the Trust Agreement, the Plan is controlling except with respect to any provisions affecting only the Debtor Trust or the Trust Beneficiaries (as defined in the Trust Agreement).
>
> B. The definition of the term "Avoidance Claims" set forth in Section 1.2.8 shall also apply to all uses of the undefined term "Avoidance Action(s)" as used in the Plan and Disclosure Statement. For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, all Avoidance Claims and Avoidance Actions, other than Avoidance Claims or Avoidance Actions challenging Security Interests and Liens, are waived by all parties and shall not survive the Effective Date
>
> C. Sections 1.2.42 and 1.2.68 of the Plan are deleted and of no force or effect.

D. Section 2.1 of the Plan is amended to require that all Professional Claims and substantial contribution expenses allowed by the Court must be paid in no more than two equal monthly payments commencing on the later of one month after (i) the Effective Date or (ii) the date the Professional fees or substantial contribution fees are allowed by this Court. The Holder of any such Administrative Claim may agree to alternative treatment with Reorganized Debtor. The retention of jurisdiction for Professional fee disputes under Section 8.1.6 shall apply to the Debtor's Trust the same as it does for Debtor.

E. Section 2.3.1 is amended to permit final applications for payment of Professional Claims to be filed within 30 days after the Effective Date in lieu of the fourteen-day deadline set forth in this Section or by any other Court Order.

F. Section 2.3.2 is amended to provide that this Section applies equally to the Committee and the Debtor's Trust as to the Debtor and Reorganized Debtor.

G. Section 3.4.1 is amended to provide that notwithstanding anything in the Plan that permits Reorganized Debtor to delay payments, commencing on October 1, 2020, Reorganized Debtor shall make minimum distributions every three months to the Debtor's Trust of $3,000 ("Quarterly Distributions"). The Quarterly Distributions shall reduce concurrent or subsequent distributions owed under this Section 3.4.1 by an equal amount. Quarterly Distributions shall be made, notwithstanding section 3.4.2 and its conditions, and continue until all distributions required under Section 3.4 are made and Debtor's Trust's fees and costs, including professional fees and costs, are paid in full. This requirement shall not be construed so as to increase the aggregate payment obligations of Reorganized Debtor under this Plan. Except for reductions as set forth in this paragraph, the "subsequent 45 monthly distributions" referenced in this Section 3.4.1 shall each be made in equal amounts and consistent with the requirements of this Section.

H. For the avoidance of doubt:

i. Section 3.4.4 is amended to provide that no Affiliates or Insiders of Debtor shall receive any distributions from Debtor's Trust and all Claims held by such Affiliates and Insiders are subordinated to Class IV Claims.

ii. Section 3.4.7 is amended to provide that under no circumstances shall Debtor's Trust's lien be subordinate to a lien asserted by an Affiliate

7

or Insider, or released for purposes of acquiring refinancing from an Affiliate or Insider unless agreed to in writing by the trustee of Debtor's Trust. Additionally, Section 4.6 shall not apply to the liens granted to the Debtor's Trust, but the Trustee shall reasonably cooperate with any sale or refinancing by Jebco compliant with the Plan and this Confirmation Order.

   I. Sections 1.2.56 and 3.5.1(A)(ii) are amended by deleting the words "three-year" so that the "Payment Period" covers the entirety of the time that Reorganized Debtor is required to make payments to Debtor Trust under the Plan. Section 3.5.1(A)(ii) is further amended to provide that the rent restrictions on the Jebco Property shall not apply if the Jebco Property is sold or refinanced, but (1) any changes in rent shall not reduce Reorganized Debtor's obligations to Debtor Trust under the Plan, and (2) the Cash/Receivable Floor condition for payment to the Debtor Trust under 3.4.2 shall be reduced by any change in rent (e.g., if the rent without the restriction increases by $10,000, then the Cash/Receivable Floor will be $10,000 less).

   J. Section 4.2 of the Plan is deleted in full. Notwithstanding this deletion, the Debtor Trust shall be controlled by a professional person appointed by the Committee (subject to the United States Trustee's objections), shall receive the Class IV distributions and shall have the right to object to any Claims.

   K. Section 10.1 is amended to delete the second sentence: "Reorganized Debtor may charge such payments to the Debtor Trust by withholding an equal amount of distributions if Debtor Trust is responsible for payments to the United States Trustee under the circumstances set forth in Section 4.2." Notwithstanding anything to the contrary in the Plan, the Reorganized Debtor shall remain responsible for all payments of fees to the United States Trustee.

   L. Section 4.4.7 is amended so that the Committee shall disband on the date that the Case is administratively closed.

   M. All change of address notices referenced in Sections 6.2 and 6.3 must also be provided to the trustee and counsel of the Debtor's Trust.

   N. Section 9.2 of the Plan is deleted and of no further force or effect.

   O. Section 13.8 is amended by striking the term "Debtor Trust" and replacing it with "Reorganized Debtor" so that the responsibility for closing of the case

8

is the responsibility of the Reorganized Debtor. Notwithstanding the above, the Debtor Trust may object to closing of the Case.

8. **Resolution of United States Trustee's Objections:** In addition to the modifications set forth above, the United States Trustee's objections are resolved in part as follows:

    A. Section 3.4.2 is amended by adding at the end of this Section the following: Notwithstanding anything to the contrary, Reorganized Debtor shall make all payments required to be made under this Plan to the Debtor Trust by no later than the fifth anniversary of the Effective Date. Any and all payments delayed by the Cash/Receivable Floor condition or otherwise not made as required under Section 3.4 of the Plan shall be paid in full on said anniversary.

    B. The United States Trustee's objections to the Trust Agreement shall be resolved as set forth in Section 4.3 of the Plan.

9. **Resolution of Penske's Objection:** Penske's objection is resolved as follows:

    A. Notwithstanding anything to the contrary in the Plan or any documents filed by Debtor, all executory contracts and unexpired leases between Debtor and Penske or any affiliate of Penske are rejected as of the Effective Date and pursuant to 11 U.S.C. § 362(c) and 11 U.S.C. § 365(p) the automatic stay no longer applies to Penske, such agreements, or any personal property leased by the Debtor pursuant to such agreement(s).

    B. Debtor and Penske shall conduct a joint inspection of all equipment that Debtor leased from Penske or any affiliate of Penske (the "<u>Vehicles</u>") by June 30, 2020 and Debtor shall return all of the Vehicles to Penske at Penske's location in Dearborn, Michigan as soon as reasonably practicable and in any event no later than July 15, 2020.

    C. Notwithstanding anything in the Plan to the contrary, Penske shall hold an Allowed Administrative Claim pursuant to 11 U.S.C. § 503(b)(2)(A) (the "<u>Penske Administrative Claim</u>") in the amount of $567,132.00, subject to the following adjustments:

        (i) Debtor and Penske shall review together the credits Debtor believes it is due on account of billing errors by Penske in open post-petition

invoices, and any such credits on which Penske and Debtor, operating in good faith, agree shall be applied to reduce the Penske Administrative Claim amount.

(ii) Charges to de-identify the Vehicles and remove technology from the Vehicles, where applicable, shall be added to the amount of the Penske Administrative Claim.

(iii) Charges to repair damage to the Vehicles beyond ordinary wear and tear ("Damage Costs") shall be added to the amount of the Penske Administrative Claim. Penske shall direct the location(s) and standard(s) for such repairs.

(iv) Additional post-petition variable charges not billed as of June 1, 2020 shall be added to the amount of the Penske Administrative Claim.

(v) Additional fixed lease charges for use of the Vehicles after the June 30, 2020 until the Vehicles' return shall be added to the amount of the Penske Administrative Claim. The Penske Administrative Claim shall be reduced appropriately in the event any Vehicles are returned before June 30, 2020.

D. Debtor shall make payments directly to Penske on the following schedule until the Penske Administrative Claim has been paid in full:

(i) $150,000.00 within 2 days of entry of this Confirmation Order;

(ii) $50,000.00 on or before June 29, 2020;

(iii) $50,000.00 on or before July 6, 2020;

(iv) $25,000.00 on or before each of July 13, July 20, and July 27, 2020;

(v) On August 3, 2020, $100,000.00 if by that date Debtor has received at least that amount in funds from a U.S. Small Business Administration Paycheck Protection Program loan, otherwise $25,000.00;

(vi) $25,000.00 each Monday from August 10, 2020 through September 28, 2020;

10

(vii) On September 30, an amount sufficient to fully pay any remaining balance (if any) of the Penske Administrative Claim other than the Damage Costs portion thereof, which shall be paid under subsection 9.D.(viii) below; and

(viii) Debtor shall pay the Damage Costs portion of the Penske Administrative Claim at the rate of $25,000.00 each Monday commencing October 5, 2020 until the Damage Costs are paid in full.

E. Should litigation between Debtor and Penske be required to enforce the terms of this section 9, then the prevailing party in such litigation shall be entitled to recover its reasonable attorney fees from the other party.

F. Penske shall have until the date that is thirty (30) days after the last Vehicle is returned to Penske to file a rejection damages claim in this chapter 11 case.

10. **Resolution of Alliance Objection**: Notwithstanding anything in the Plan to the contrary, Alliance's Claim shall be treated as a Class IV General Unsecured Claim and Allowed in the amount of $554,000.00 and shall be disallowed to the extent the Claim exceeds this amount. Debtor and Alliance mutually waive and release one another from all Claims and Causes of Action either may have against the other, with the sole exception of Alliance's Allowed Class IV Claim. Debtor and Alliance shall stipulate to dismissal with prejudice of the state court litigation in which each allege claims against the other, with each party to bear its own costs.

11. **Clarifying Provision Regarding Assumption of FCA US Executory Contract:** The following shall be added as a new Section 11.6:

All purchase orders and other agreements (with the governing FCA US terms and conditions) (collectively, "Purchase Orders") as issued by FCA US LLC ("FCA US") to the Debtor, whether issued prior to or after the Petition Date, are hereby assumed by the Debtor and assigned to the Reorganized Debtor. The Reorganized Debtor assumes any and all obligations, claims, and liabilities owing to FCA US whether such obligations, claims, or liabilities arose prior to or after the Petition Date or prior to or after the effective date of this Confirmation Order, including without limitation any cure amounts that are due FCA US. Nothing herein bars any rights or remedies of FCA US under the Purchase Orders, all of which have been assumed by the Reorganization Debtor, and the Reorganized Debtor will be responsible for satisfying all such rights and remedies without limitation or restriction.

12. **Rejection of Executory Contracts and Leases**:  To the extent not expressly assumed or treated pursuant to a prior Court order, the Plan (including the assumption referenced in Section 11.2 [Filed at Docket No. 193]), this Order, or subject to a pending motion to assume or reject, all executory contracts and unexpired leases of the Debtor not previously rejected by the Debtor are hereby rejected.

13. **Governmental Approvals Not Required**:  This Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any local, or state governmental authority with respect to the implementation or consummation of the Plan, and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments or agreements, and any amendments or modifications thereto.

14. This Order amends and supersedes the Plan and, in the event of any conflict between the Plan and this Order, the terms of this Order will govern.

15. This Court shall reserve and retain jurisdiction to enforce the terms of the Confirmation Order or rule upon any disputes arising from this Confirmation Order or the Plan.

16. No just reason exists for delay in the implementation of this Confirmation Order.  The Court hereby directs entry of the judgment set forth herein.  This

Confirmation Order is a final and appealable order pursuant to Federal Rules of Bankruptcy Procedure 7054(a) and 9014 and Federal Rule of Civil Procedure 54(b).

**Signed on June 18, 2020**



/s/ Maria L. Oxholm

Maria L. Oxholm
United States Bankruptcy Judge